# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Motion to Quash Non-Party Subpoena<br><br>Movant:  Donald F. McGahn II<br>         c/o Christopher N. Thatch<br>         51 Louisiana Avenue, NW<br>         Washington, DC 20001<br><br><br>Underlying Proceeding:<br><br><br>Arlene Delgado,<br><br>         Plaintiff,<br><br>   v.<br><br>Donald J. Trump for President, Inc.; Sean Spicer; Reince Priebus; Steve Bannon,<br><br>         Defendants. | Case No. _____<br><br><br><br><br><br><br><br><br><br>Case No. 19-cv-11746<br><br>United States District Court for the Southern District of New York<br><br>Hon. Analisa Torres (District Judge)<br>Hon. Katharine Parker (Magistrate Judge) |

## MEMORANDUM OF LAW IN SUPPORT OF
## NON-PARTY DONALD F. MCGAHN II'S MOTION TO QUASH

JONES DAY

Michael R. Shumaker
  *pro hac vice* forthcoming
Christopher N. Thatch
  D.C. Bar No. 980227
David K. Suska
  *pro hac vice* forthcoming
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
mrshumaker@jonesday.com
cthatch@jonesday.com
dsuska@jonesday.com

March 22, 2024                              *Counsel for Donald F. McGahn II*

# **TABLE OF AUTHORITIES**

**Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND .............................................................................................................................. 3

    A.    Ms. Delgado's Lawsuit. .............................................................................................. 3

    B.    Ms. Delgado's Non-Party Subpoena to Mr. McGahn............................................... 4

ARGUMENT .................................................................................................................................... 6

    A.    The Subpoena Targets Information Protected by Attorney-Client Privilege........... 6

    B.    The Subpoena Targets Information Protected by Executive Privilege. ................... 8

    C.    The Subpoena Imposes an Undue Burden on Mr. McGahn. ................................. 10

    D.    The Subpoena Fails to Designate a Place of Compliance. ..................................... 13

CONCLUSION ............................................................................................................................... 13

CERTIFICATE OF SERVICE ....................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Apex Mortg. Corp. v. Great N. Ins. Co.*,
  2018 WL 318481 (N.D. Ill. Jan. 8, 2018) ................................................................. 7

*Chang v. United States*,
  512 F. Supp. 2d 62 (D.D.C. 2007) .......................................................................... 7

*Chen v. FBI*,
  2022 WL 17851618 (D.D.C. Oct. 18, 2022) ........................................................... 6

*\*Cheney v. U.S. District Court for the District of Columbia*,
  542 U.S. 367 (2004) ..................................................................................... 8, 9, 10

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................ 6

*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*,
  110 F. Supp. 3d 37 (D.D.C. 2015) .................................................................. 11, 12

*Cusumano v. Microsoft Corp.*,
  163 F.3d 702 (1st Cir. 1998) ................................................................................ 11

*Dell Inc. v. DeCosta*,
  233 F. Supp. 3d 1 (D.D.C. 2017) ................................................................... 10, 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................................... 9

*\*Dep't of the Navy v. Egan*,
  484 U.S. 518 (1988) ............................................................................................... 9

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  319 F. Supp. 3d 70 (D.D.C. 2018) ........................................................................ 13

*Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*,
  2022 WL 2820667 (S.D. Cal. July 18, 2022) ....................................................... 13

*Flores-Kemmerer v. Portfolio Recovery Assocs., LLC*,
  2022 WL 612334 (S.D. Ind. Mar. 2, 2022) ............................................................ 6

# TABLE OF AUTHORITIES

                                                                                                                                     **Page**

*\*Gouse v. District of Columbia*,
    359 F. Supp. 3d 51 (D.D.C. 2019)..................................................................................10, 11

*Harris v. Koenig*,
    2010 WL 4910261 (D.D.C. Dec. 2, 2010)................................................................................7

*In re Slack*,
    768 F. Supp. 2d 189 (D.D.C. 2011).........................................................................................7

*In re Subpoena to Wang*,
    214 F. Supp. 3d 91 (D.D.C. 2016).......................................................................................6, 7

*Int'l Union, United Mine Workers of Am. v. CONSOL Energy Inc.*,
    2020 WL 7042815 (D.D.C. Dec. 1, 2020)................................................................................7

*\*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977)..................................................................................................................9

*Patane v. Nestle Waters N. Am. Inc.*,
    2022 WL 6569823 (D. Conn. Oct. 4, 2022) ............................................................................6

*Pernell v. Fla. Bd. of Governors of State Univ.*,
    84 F.4th 1339 (11th Cir. 2023) ................................................................................................7

*Russell v. Maman*,
    2021 WL 3212646 (N.D. Cal. July 29, 2021)..........................................................................6

*\*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
    276 F.R.D. 376 (D.D.C. 2011)............................................................................................7, 8

*Trump v. Thompson*,
    142 S. Ct. 680 (2022) (statement of Kavanaugh, J.)................................................................9

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*,
    238 F. Supp. 2d 270 (D.D.C. 2002).........................................................................................6

*Unigene Labs., Inc. v. Apotex, Inc.*,
    2007 WL 2972931 (N.D. Cal. Oct. 10, 2007)..........................................................................7

# **TABLE OF AUTHORITIES**

**Page**

*United States ex rel. Kammarayil v. Sterling Operations, Inc.*,
   2019 WL 464820 (D.D.C. Feb. 6, 2019) ...................................................................................7

*United States v. Google LLC*,
   2023 WL 5725518 (N.D. Cal. Sept. 5, 2023) .........................................................................13

*\*United States v. Nixon*,
   418 U.S. 683 (1974)..............................................................................................................9, 10

*\*Watts v. SEC*,
   482 F.3d 501 (D.C. Cir. 2007) .............................................................................7, 8, 11, 13

*Williams v. Johnson*,
   597 F. Supp. 2d 107 (D.D.C. 2009) ........................................................................................7

*Winston & Strawn LLP v. Janssen Prod., L.P.*,
   2022 WL 3588106 (D.N.J. Aug. 22, 2022) ............................................................................7

**OTHER AUTHORITIES**

9A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2463.1
   (3d ed. April 2023 update)........................................................................................................7

*Assertion of Executive Privilege Concerning the Special Counsel's Interviews of
   the Vice President and Senior White House Staff*,
   32 Op. O.L.C. 7 (2008)..............................................................................................................9

*Federal Rule of Civil Procedure 26 ..........................................................................2, 11, 12, 13

Federal Rule of Civil Procedure 37 ...................................................................................12, 13

*Federal Rule of Civil Procedure 45 ............................................................2, 6, 7, 8, 10, 13, 14

*Whistleblower Protections for Classified Disclosures*,
   22 Op. O.L.C. 92 (1998) (statement of Randolph D. Moss, Deputy Assistant
   Attorney General) ......................................................................................................................9

## INTRODUCTION

This motion to quash concerns an ill-conceived non-party subpoena requesting information from former Counsel to the President Donald F. McGahn II that is plainly protected from disclosure by attorney-client privilege and executive privilege. The subpoena arises out of a lawsuit filed in the Southern District of New York by Arlene Delgado, a writer and commentator who supported Donald Trump during the 2016 election. The defendants are a campaign-affiliated entity, Donald J. Trump for President, Inc., as well as Trump Administration officials Sean Spicer, Reince Priebus, and Stephen Bannon. Ms. Delgado has pleaded claims based on allegations that the defendants stripped her of campaign-related responsibilities and denied her a job in the Trump Administration after she disclosed to them that she was pregnant and that the father of her child was her then-supervisor on the campaign trail. *See* First Amend. Compl., *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Mar. 28, 2022), ECF 94 ("FAC").

On March 7, 2024, Ms. Delgado served the non-party subpoena at issue on Mr. McGahn, who at all times relevant to the underlying litigation served as legal counsel to the Trump Campaign or Trump Transition, or as Counsel to President Trump (colloquially referred to as the White House Counsel). The subpoena directs Mr. McGahn to produce documents and give testimony regarding the alleged decision by the Trump Campaign, Trump Transition, and Trump Administration to deny Ms. Delgado employment. *See* Ex. A at 1, 4. Neither the complaint nor the subpoena alleges or even hints that Mr. McGahn had any involvement with any purported wrongdoing. To the contrary, in a letter to the magistrate judge presiding over discovery, Ms. Delgado professed "high esteem" for Mr. McGahn, stating that she "understands him to be a man of great ethics." Ex. B at 4. Nonetheless, more than four years after she filed her lawsuit and as fact discovery draws to a close, Ms. Delgado apparently has come to believe that Mr. McGahn has information that is somehow relevant to her case.

The non-party subpoena should be quashed in its entirety because it is invalid for at least four independent reasons.

*First*, the subpoena targets information protected by attorney-client privilege in violation of Federal Rule of Civil Procedure 45(d)(3)(A)(iii).  Even assuming Mr. McGahn possesses information relevant to the claims or defenses, he would have acquired that information only in his role as legal counsel to the Trump Campaign, Trump Transition, or Trump Administration.

*Second*, the subpoena targets information protected by executive privilege, also in violation of Rule 45(d)(3)(A)(iii).  Ms. Delgado has stated her intention to ask Mr. McGahn about decisions made regarding "White House employees' security clearance[s]," Ex. B at 4., which would intrude into the deliberative-process and national-security components of executive privilege.

*Third*, the subpoena seeks to impose an undue burden on Mr. McGahn in violation of Rule 45(d)(3)(A)(iv).  The subpoena requests extensive deposition testimony and document production spanning many years with only an attenuated connection to Ms. Delgado's claims.  That burden is not only undue but unnecessary as Ms. Delgado can obtain the information "from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i)—namely, the actual parties.  Indeed, Ms. Delgado has conceded that the only reason for this eleventh-hour subpoena of Mr. McGahn is that certain defendants have failed to turn over documents.  Ex. B at 4.  But the proper recourse for any perceived failure on the part of those defendants is a motion to compel directed to them, not a burdensome non-party subpoena directed to Mr. McGahn.

*Fourth*, the subpoena is facially invalid because it fails to specify a place of compliance as required by Rule 45(a)(1)(A)(iii).

Each of these reasons is sufficient to grant Mr. McGahn's motion.  Collectively they leave no doubt.  Consistent with Rule 45(d)(3)(A), the Court "must quash" the subpoena in its entirety.

## BACKGROUND

The following summary of events leading up to the motion to quash is drawn primarily from Ms. Delgado's first amended complaint. Mr. McGahn has had no prior involvement in the underlying case, and he takes no position on the veracity of the allegations of the complaint.

**A.     Ms. Delgado's Lawsuit.**

Ms. Delgado is a "political commentator, writer, and attorney" who "became one of [Mr. Trump's] earliest, most loyal, and most vocal supporters, at a time when almost no political writers or pundits were willing to publicly support him." FAC ¶¶ 12, 16. Her work garnered attention, and in August 2016, she "formally joined the Campaign" by "sign[ing] a 'Consulting Agreement.'" *Id.* ¶ 21. Thereafter, Ms. Delgado "appeared on television on behalf of Donald Trump nearly 100 times and defended him against every attack." *Id.* ¶ 33. Mr. Trump "complimented her" and "promised" her a "prime role" were he to win the election. *Id.* ¶¶ 34, 35. "Ms. Delgado's supervisor, Campaign Spokesperson Jason Miller, also assured Ms. Delgado many times that she was 'going in' to the Trump Administration with a White House job." *Id.* ¶ 36.

In November 2016, "Ms. Delgado learned that she had become pregnant by [Mr.] Miller," her supervisor on the trail. *Id.* ¶ 37. Over the next month, Ms. Delgado informed Mr. Miller and Mr. Bannon, and they in turn informed Mr. Priebus and Mr. Spicer. *Id.* ¶¶ 38–42. Shortly after they learned of her pregnancy, Mr. Bannon, Mr. Priebus, and Mr. Spicer allegedly "stripped Ms. Delgado of her job responsibilities and duties for … the remainder of her employment with them, from late December 2016 through … late January 2017." *Id.* ¶ 47. Ms. Delgado also contends that she was "completely ignored" during the process of placing former campaign staffers into "high-ranking and well-paying White House jobs," *id.* ¶ 52, and that the defendants "advised the Trump Administration … to remove [her] from the list of incoming White House personnel and to not hire her," *id.* ¶ 55. In sum, Ms. Delgado claims that the defendants "actually terminated and/or

3

constructively terminated [her] from the Campaign because of her sex, gender, and pregnancy, as well as in retaliation for her complaining of discrimination," *id.* ¶ 53, and that she was "prevented … from obtaining employment with the White House and Federal Government … because of her sex, gender, and pregnancy, and because she complained of discrimination," *id.* ¶ 54. *See also id.* ¶ 57 (alleging that "[b]ut for" defendants' wrongful conduct "[Ms. Delgado] would have almost certainly been named Deputy Press Secretary").

In December 2019, Ms. Delgado filed a complaint in the Southern District of New York. *See* Compl., *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Dec. 23, 2019), ECF 1. The complaint pleaded a dozen claims under New York law, including promissory estoppel, unlawful discrimination, and tortious interference with economic advantage. *Id.* ¶¶ 57–97. It named Donald J. Trump for President, Inc., Trump for America, Inc., Mr. Spicer, Mr. Priebus, and Mr. Bannon as defendants. *Id.* ¶¶ 5–9. Following motion practice, Ms. Delgado filed an amended complaint. The amended complaint likewise pleads a dozen claims under New York law, with federal jurisdiction premised on diversity of citizenship. *See* FAC ¶¶ 3, 92–135.

**B.     Ms. Delgado's Non-Party Subpoena to Mr. McGahn.**

In August 2022, Magistrate Judge Katharine Parker set January 31, 2023 as the deadline for fact discovery in Ms. Delgado's case. *See* Order, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Aug. 16, 2022), ECF 103. But Ms. Delgado, who is now proceeding *pro se*, obtained numerous extensions that pushed the discovery deadline to April 15, 2024. *See, e.g.*, Discovery Order and Scheduling Order at 1, *Delgado v. Donald J. Trump for President, Inc.*, No. 19-cv-11746 (S.D.N.Y. Mar. 1, 2024), ECF 204.

On March 7, Ms. Delgado served Mr. McGahn with the non-party subpoena at issue. *See* Ex. A. In addition to deposition testimony, the subpoena seeks a raft of communications and documents over a multi-year period. For example, Ms. Delgado has demanded:

4

- "All communications … and all documents … regarding, discussing, and/or concerning any complaint, whether formal or informal (including but not limited to concerns raised), made about any staffer/advisor of the 2016 Campaign."

- "All communications … and all documents … regarding, discussing, and/or concerning [Ms. Delgado], at any time."

- "All communications … and all documents … regarding, discussing, concerning, and/or reflecting steps taken in regards to [Ms. Delgado's] role in the White House (December 2016 onward)."

- "All documentation reflecting notices, flyers, information, booklets, and pamphlets provided to 2016 Campaign staffers/advisors regarding how to report discrimination, concerns, complaints, and the like (2015 to January 2017)."

- "All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to [Mr. McGahn], supplied to [Mr. McGahn], or on which [Mr. McGahn] was included, by or sent to [Mr. McGahn] by [Mr. Priebus] and/or anyone else, December 2016–May 2017, regarding, concerning, or related to [Ms. Delgado]."

- "All emails, text messages, documents, lists, memoranda, letters, forwarded conversations, forwarded documents, and any communication or document at all, that was forwarded to [Mr. McGahn], supplied to [Mr. McGahn], or on which [Mr. McGahn] was included, by or sent to [Mr. McGahn] by [Mr. Priebus] and/or anyone else, December 2016–May 2017, regarding, concerning, or related to Jason Miller."

Ex. A at 4.

The subpoena noticed Mr. McGahn's deposition for March 25, 2024 and designated the place of compliance as "(via ZOOM) (link will be provided or contact Plaintiff)." Ex. A at 1. Mr. McGahn's timely motion to quash followed.[1]

## ARGUMENT

"Although the Federal Rules of Civil Procedure allow parties wide latitude in seeking discovery … there are nonetheless limits on what a party may obtain." *In re Subpoena to Wang*, 214 F. Supp. 3d 91, 94 (D.D.C. 2016). Two of the most important limits on subpoenas are found in Rule 45(d)(3)(A). Rule 45(d)(3)(A)(iii) shields against disclosure of "privileged or other protected matter." Rule 45(d)(3)(A)(iv) protects the subpoenaed party from "undue burden." The non-party subpoena directed to Mr. McGahn blows past both of those limits, and it violates Rule 45 in other ways too. The Court must quash it.

### A.   The Subpoena Targets Information Protected by Attorney-Client Privilege.

First, the subpoena should be quashed because it intrudes upon the attorney-client privilege, "the oldest of the evidentiary privileges," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Indeed, Rule 45(d)(3)(A)(iii) provides that the Court "*must*

---

[1] The motion to quash is properly filed in this Court as "the court for the district where compliance is required," Rule 45(d)(3)(A). The subpoena seeks deposition testimony via Zoom. Ex. A at 1. "[F]or depositions to be taken via Zoom, the Court deems the place of compliance to be where the deponent is located." *Chen v. FBI*, 2022 WL 17851618, at *3 (D.D.C. Oct. 18, 2022) (internal quotation marks omitted); *accord*, *e.g.*, *Patane v. Nestle Waters N. Am. Inc.*, 2022 WL 6569823, at *3 (D. Conn. Oct. 4, 2022); *Flores-Kemmerer v. Portfolio Recovery Assocs., LLC*, 2022 WL 612334, at *1 (S.D. Ind. Mar. 2, 2022); *Russell v. Maman*, 2021 WL 3212646, at *2 (N.D. Cal. July 29, 2021). Here, that means Washington, D.C., where Mr. McGahn's law office is located and where he practices. *Cf.* Rule 45(c)(1)(A) ("A subpoena may command a person to attend a … deposition … within 100 miles of where the person resides, is employed, or regularly transacts business in person.")

In addition, the motion is "timely" for purposes of Rule 45(d)(3)(A) because it was filed "within the time set in the subpoena for compliance." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 278 & n.6 (D.D.C. 2002).

*quash* … a subpoena that … requires disclosure of privileged or other protected matter" (emphasis added). *See also Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (Kavanaugh, J.) ("The rule requires that district courts quash subpoenas that call for privileged matter."); 9A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2463.1 (3d ed. April 2023 update) ("One of the most important protections of persons subject to a subpoena is that of privilege.").

Courts in this District have not hesitated to enforce Rule 45(d)(3)(A)(iii) by quashing subpoenas that ask for privileged or other protected material. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. CONSOL Energy Inc.*, 2020 WL 7042815, at *5–7 (D.D.C. Dec. 1, 2020); *United States ex rel. Kammarayil v. Sterling Operations, Inc.*, 2019 WL 464820, at *2 (D.D.C. Feb. 6, 2019); *In re Slack*, 768 F. Supp. 2d 189, 193–98 (D.D.C. 2011); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376 (D.D.C. 2011); *Harris v. Koenig*, 2010 WL 4910261, at *3 (D.D.C. Dec. 2, 2010); *Williams v. Johnson*, 597 F. Supp. 2d 107, 116–19 (D.D.C. 2009); *Chang v. United States*, 512 F. Supp. 2d 62, 64 (D.D.C. 2007); *see also In re Wang*, 214 F. Supp. 3d at 95–96 (staying deposition due to privilege concerns). Courts elsewhere have done the same. *See, e.g.*, *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1341, 1345 (11th Cir. 2023); *Winston & Strawn LLP v. Janssen Prod., L.P.*, 2022 WL 3588106, at *3 (D.N.J. Aug. 22, 2022); *Apex Mortg. Corp. v. Great N. Ins. Co.*, 2018 WL 318481, at *4 (N.D. Ill. Jan. 8, 2018); *Unigene Labs., Inc. v. Apotex, Inc.*, 2007 WL 2972931, at *3–4 (N.D. Cal. Oct. 10, 2007).

*Eastman Kodak* shows how the rule is applied. There, as here, a non-party attorney moved to quash a subpoena issued in connection with litigation in another forum. The attorney argued that the court had to quash the subpoena because it sought testimony that "will necessarily touch on information protected by attorney-client privilege." 276 F.R.D. at 377. (internal quotation marks omitted). The court agreed, citing Rule 45 and reasoning that to permit the deposition would

7

"disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Id.* at 380–81; *see also id.* (collecting cases).

The Court should do the same here. Indeed, this dispute is even more straightforward than *Eastman Kodak*, because the subpoena to Mr. McGahn does not merely "touch on" privileged information—privileged information is its overriding focus. The subpoena specifically and repeatedly demands that Mr. McGahn produce documents shared with or by him in his capacity as legal counsel to the Trump Campaign, Trump Transition, or the President. Ex. A at 4. Confirming as much, Ms. Delgado explained to Magistrate Judge Parker that she hopes to depose Mr. McGahn precisely because he was "counsel at the time." Ex. B at 4. It is thus inconceivable that the sought-after documents and testimony would not be subject to attorney-client privilege.

**B.**     **The Subpoena Targets Information Protected by Executive Privilege.**

Likewise, the Court should quash the subpoena because it threatens to intrude upon executive privilege. *See Watts*, 482 F.3d at 503, 504, 510 (recognizing that Rule 45(d)(3)(A)(iii) reaches executive privilege). Ms. Delgado intends to question Mr. McGahn about White House decisions regarding "White House employees' security clearance[s]." Ex. B at 4. Those questions would almost certainly implicate the deliberative-process and national-security components of executive privilege. And a court order requiring Mr. McGahn to answer such questions would unavoidably raise separation-of-powers concerns. The Supreme Court has instructed lower courts to exercise caution in such circumstances, reasoning that "occasion[s] for constitutional confrontation … should be avoided whenever possible." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 389–90 (2004) (internal quotation marks omitted).

The Supreme Court has recognized the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of their manifold duties." *United States v. Nixon*, 418 U.S. 683, 705 (1974). After all, "[h]uman

8

experience teaches that those who expect public dissemination of their remarks may well temper candor … to the detriment of the decisionmaking process." *Id.* Executive privilege therefore extends to Executive Branch deliberations, necessarily including deliberations about who will fill key White House positions. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *see also Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 9 (2008). Moreover, as an institutional prerogative, the privilege outlasts the tenure of any officeholder. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 448–49 (1977); *Trump v. Thompson*, 142 S. Ct. 680, 681 (2022) (statement of Kavanaugh, J.) ("Without sufficient assurances of *continuing* confidentiality, Presidents and their advisers would be chilled from engaging in the full and frank deliberations upon which effective discharge of the President's duties depends.").

The Supreme Court also has recognized the President's authority and duty "to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988). Indeed, "since the Washington Administration, Presidents and their senior advisers have repeatedly concluded that our constitutional system grants the executive branch authority to control the disposition of secret information." *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 97 (1998) (statement of Randolph D. Moss, Deputy Assistant Attorney General). Executive privilege therefore reaches "national security" information. *See, e.g.*, *Nixon*, 418 U.S. at 706.

The non-party subpoena directed to Mr. McGahn runs headlong into executive privilege. Ms. Delgado seeks information about whether she "would not have qualified for a position at the White House due to security clearance issues." Discovery Order and Scheduling Order at 2, ECF

9

204. And she has indicated that she would ask why others did or did not receive security clearances. *See* Ex. B at 8–15 (identifying individuals Ms. Delgado believes should not have received clearances if Ms. Delgado could not). Even assuming Mr. McGahn possesses such information years after departing the Office of White House Counsel (and he does not), its disclosure would undermine the prerogatives of the Executive Branch to protect the confidentiality of its deliberations and to control the dissemination of classified information. Put simply, a non-party subpoena directed to the former Counsel to the President about decisions made regarding White House staffing and security clearances is "not a routine discovery [request]." *Cheney*, 542 U.S. at 385. Instead, "special considerations control [given] the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications." *Id.* This Court should adhere to those "special considerations" and preclude Ms. Delgado from demanding information that is protected by executive privilege.

**C.    The Subpoena Imposes an Undue Burden on Mr. McGahn.**

The subpoena also should be quashed because it seeks to impose an "undue burden" on Mr. McGahn in violation of Rule 45(d)(3)(A)(iv). *See Gouse v. District of Columbia*, 359 F. Supp. 3d 51, 56 (D.D.C. 2019) ("[Rule 45] mandates that a district court quash an otherwise valid third-party subpoena [that] … 'subjects a person to undue burden.'" (quoting Rule 45(d)(3)(A)(iv)).

Whether a subpoena imposes an "undue burden" depends "on the specific facts of the case." *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017). As a general matter, courts "must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Id.* (internal quotation marks omitted). In doing so, "courts should consider relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Id.* (internal quotation marks omitted). When a witness would assert privilege

as to some or all documents, "prepar[ing] a privilege log" constitutes part of his burden. *Id*. The witness's status as a non-party also weighs in favor of finding undue burden. *See Watts*, 482 F.3d at 509; *see also Cusumano v. Microsoft Corp.*, 163 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight"). Finally, "courts must … consider Rule 26," *Gouse*, 359 F. Supp. 3d at 56, which similarly restricts discovery of information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i).

This non-party subpoena presents a textbook example of undue burden. Magistrate Judge Parker has indicated that the only potentially relevant information Mr. McGahn may possess concerns "information relevant to Defendants' defense that Plaintiff would not have qualified for a position at the White House due to security clearance issues." Discovery Order and Scheduling Order at 2, ECF 204. But the subpoena seeks a wide range of communications and other materials that have nothing to do with that defense—and the demand for documents spans the course of many years. Ex. A at 4. The subpoena is therefore grossly overbroad. *Cf. Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) (quashing subpoena for materials with only an "attenuated relevance" to the claims).

The subpoena also fails to describe the sought-after documents with the requisite particularity—by a wide margin. For example, Ms. Delgado seeks "All communications … and all documents … regarding, discussing, and/or concerning any complaint, whether formal or informal (including but not limited to concerns raised), made about any staffer/advisor of the 2016 Campaign." Ex. A at 4. This could cover anything from legitimate complaints about harassment to one-off text messages about a staffer's tardiness.

At the same time, complying with the subpoena would impose a significant burden on Mr.

McGahn, a non-party and attorney, both in terms of time and expense. Given the subpoena's broad and ill-defined sweep, the likely need for an extensive privilege log, the potential obligation to consult the Department of Justice in connection with issues of executive privilege, the demand to appear personally to give testimony, and the short timeframe allowed for compliance, Mr. McGahn would have to devote immediate and substantial attention to this matter—to the exclusion of his obligations to current clients.

The clearest indication that the subpoena imposes an undue burden, however, is that it seeks information Ms. Delgado can obtain "from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i)—namely, the parties to the litigation. Indeed, there is no need to speculate about what information might be available elsewhere: Ms. Delgado has *conceded* that she is turning to Mr. McGahn at this late stage in discovery because "Mr. Priebus stated during his deposition that … he reached out to Don McGahn" and "forwarded [certain] emails and documents … to Don McGahn," but "***Mr. Priebus has produced no documents in this matter, despite extensive requests***." Ex. B at 4 (emphasis in original). Confirming her motivation, Ms. Delgado has further explained that "***It appears there are documents, enormously relevant to this matter, that have yet to be produced and have been withheld.***" *Id.* (emphasis in original).

Ms. Delgado is certainly entitled to take discovery from Mr. Priebus (and others). If Ms. Delgado believes any defendant is shirking discovery obligations, there is a tried-and-true remedy available to her: a motion to compel under Rule 37(a). If that fails, there is a back-up option: a request for sanctions under Rule 37(b). What Ms. Delgado cannot do, however, is use a non-party subpoena as a substitute for those conventional measures. If a litigant could simply subpoena non-parties when confronted with typical foot-dragging, Rule 26(b)(2)(C)(i) would be reduced to an empty shell, and non-parties would be routinely conscripted into costly litigation. Fortunately,

that is not the law. *See Watts*, 482 F.3d at 509 (explaining that "[t]he Rule 45 'undue burden' standard requires district courts … to be generally sensitive to the costs imposed on third parties," and identifying Rule 26(b) as a particularly important parameter); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 82–83 & n.4 (D.D.C. 2018) (same).

### D.     The Subpoena Fails to Designate a Place of Compliance.

If all this were not enough, the subpoena also should be quashed because it fails to designate a place of compliance as Rule 45(a)(1)(A)(iii) requires. Instead, the subpoena lists "(via Zoom) (link will be provided or contact Plaintiff)." Ex. A at 1. But "a subpoena that does not specify all information required by [Rule 45], *including the place of compliance*, is facially invalid." *United States v. Google LLC*, 2023 WL 5725518, at *19 (N.D. Cal. Sept. 5, 2023) (emphasis added). Courts have therefore refused to compel compliance with subpoenas that list "Zoom" rather than a physical location. *See, e.g.*, *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, 2022 WL 2820667, at *1, *2, *7 (S.D. Cal. July 18, 2022). This Court should do the same. Failure to specify a place of compliance is not some trivial deficiency. It impairs the witness's ability to assess the subpoena's conformity with Rule 45(c) and the proper forum for a motion to quash under Rule 45(d). This Court should not overlook such a glaring defect.

### CONCLUSION

For the reasons stated above, Mr. McGahn respectfully requests that the Court enter an order granting the motion and quashing the subpoena.

Dated: March 22, 2024

Respectfully submitted,

JONES DAY

Michael R. Shumaker
  *pro hac vice* forthcoming
Christopher N. Thatch
  D.C. Bar No. 980227
David K. Suska
  *pro hac vice* forthcoming
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
mrshumaker@jonesday.com
cthatch@jonesday.com
dsuska@jonesday.com


By: /s/ Christopher N. Thatch
    Christopher N. Thatch

*Counsel for Donald F. McGahn II*

14

## CERTIFICATE OF SERVICE

    I hereby certify that on March 22, 2024, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia by emailing a true and correct copy to DCD_Intake@DCD.USCourts.gov.  I further certify that on March 22, 2024, I served Arlene Delgado, who issued the subpoena that is the subject of the motion to quash, and who is proceeding *pro se* in the underlying litigation in the United States District Court for the Southern District of New York, via email and mail.

                                                   /s/ Christopher N. Thatch
                                                   Christopher N. Thatch