UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD F. MCGAHN, II, <br><br>            Petitioner, <br><br>    v. <br><br> ARLENE DELGADO, <br><br>            Respondent. | Miscellaneous Action No. 24-38 (JMC) |

## ORDER

The Court grants in part and denies in part Petitioner Donald McGahn's motion to quash, ECF 1. Specifically, the Court will permit Respondent Arlene Delgado to depose McGahn on the sole topic of White House security clearance requirements in 2017. But considering the sensitive nature of that issue and potential executive privilege objections, the Court orders that Delgado conduct the deposition by written questions pursuant to FED. R. CIV. P. 31.

**I.    BACKGROUND**

Delgado's motion to quash grows out of underlying litigation in the Southern District of New York about alleged pregnancy discrimination. *Delgado v. Donald J. Trump for President, Inc., et. al.*, No. 1:19-cv-11764-AT-KHP (S.D.N.Y. filed Dec. 23, 2019). Delgado filed the underlying suit against Donald J. Trump for President, Inc., and high-ranking 2016 election campaign officials Sean Spicer, Reince Priebus, and Stephen Bannon. ECF 1-1 at 6. Delgado, who was a staffer on the 2016 campaign, alleged that she was stripped of her responsibilities and denied a job in the White House because she disclosed that she was pregnant by her then-supervisor. *Id.* Defendants in that case allege, among other things, that Delgado was not qualified for a position in the White House because she would not have met the requirements for a security clearance.

During discovery, Delgado served a subpoena on McGahn, who worked as legal counsel to the campaign and later as White House counsel. *Id.* McGahn is not a party to the underlying litigation. The subpoena sought McGahn's testimony at a deposition and a broad swath of documents including "all documents" related to any complaint made about any 2016 Trump campaign staffer, any communication related to Delgado, and all policy information regarding discrimination provided by Human Resources. ECF 1-2 at 5. Magistrate Judge Katharine Parker is overseeing discovery in the case.

McGahn moved to quash the subpoena in this Court because, if required to testify, he would be deposed in Washington, D.C. Fed. R. Civ. P. 45(d)(3)(A). McGahn asserts four objections in his motion to quash on the bases of: executive privilege, attorney-client privilege, undue burden, and failure to specify a place of compliance. *See* ECF 1-1. McGahn also contends that the subpoena sought more information than Judge Parker ordered that Delgado could obtain in discovery. ECF 10 at 2–3.

On April 30, 2024, the Court held a hearing on the motion, during which Delgado and McGahn presented conflicting interpretations of Judge Parker's prior discovery rulings. Min. Entry 4/30/24. The Court ordered the Parties to seek clarification from Judge Parker and file a joint status report describing any discovery limitations that Judge Parker already imposed. The Parties did so, and also submitted Judge Parker's order. ECF 16. The Court is now prepared to rule.

## II.   ANALYSIS

Judge Parker's order is clear. She permitted Delgado to depose McGahn for the sole purpose of inquiring "what the qualification requirements were for working in the White House in 2017 specifically as to security clearances." ECF 16-1 at 8–9. She found that this information was relevant to Defendants' claim that Delgado "would not have met the security clearance

requirements for working in the White House had she been offered a position there." *Id.* at 9. Judge Parker knows the underlying case far better than this Court because she has managed it since 2019. *See* Min. Entry 12/26/19, *Delgado v. Donald J. Trump for President*. This Court cannot, and will not, disturb her discovery rulings. Accordingly, the only discovery Delgado can attempt to seek from McGahn is his deposition testimony concerning White House security clearance requirements in 2017 and whether she would have met those requirements. Petitioner's motion to quash is granted to the extent her subpoena seeks any other information.

Now that the scope of permissible discovery is clear, the Court will address McGahn's objections to Delgado's subpoena seeking his testimony about White House security requirements.

*Executive Privilege*

First, the Court will address McGahn's executive privilege objection, as that is the primary concern McGahn raised at the motions hearing. The Supreme Court has endorsed the role of courts to narrow subpoenas before the Executive Branch would need to assess whether to invoke executive privilege. *See Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 390 (2004) ("[T]here is sound precedent in the District of Columbia itself for district courts to explore other avenues, short of forcing the Executive to invoke privilege, when they are asked to enforce against the Executive Branch unnecessarily broad subpoenas."). Because McGahn is a third party to the underlying litigation and has never appeared before Judge Parker, there has been no occasion for Judge Parker to consider his potential objections to the subpoena or determine whether to narrow it, including on the basis of executive privilege. So, the Court finds no tension between ruling on the objection and Judge Parker's discovery rulings in the underlying case.

The executive privilege recognizes the "valid need for protection of communications between high Government officials and those who advise and assist them in the performance of

3

their manifold duties." *United States v. Nixon*, 418 U.S. 683, 705 (1974). As relevant here, the deliberative process component of the privilege extends to Executive Branch deliberations, which may include internal discussions about filling key White House positions, *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001), and the national security component may implicate "whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch," *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988).

     McGahn argues that Delgado's subpoena, even as limited by Judge Parker, intrudes on executive privilege because it will require McGahn to disclose sensitive information about the White House's decisions concerning security clearances. ECF 1-1 at 13–15. Delgado counters by emphasizing her need for the information. According to Delgado, McGahn may be the only source of this information, ECF 9 at 2, which is critical to Defendants' claim that she could not have obtained a security clearance and therefore was ineligible for a job in the White House. Delgado believes McGahn, as the point person for security clearances during the relevant time, would have information that she could use to test the Defendants' assertion that she would have been denied a security clearance.

     Here, the Court cannot determine which, if any, of Delgado's questions may intrude upon executive privilege because the Court does not know what Delgado plans to ask McGahn. Some questions that relate to general security clearance requirements—like which forms a candidate must fill out for a background check or whether anything in Delgado's background is per se disqualifying—may not implicate executive privilege concerns, while other questions—like the reason another candidate received or did not receive a security clearance or internal conversations about security protocols—could.

But the Court recognizes that security clearances are sensitive, and it is possible that the Executive Branch may object to Delgado's questions. Therefore, this Court orders the deposition to proceed by written questions. *See* FED. R. CIV. P. 31. The questions must concern only "what the qualification requirements were for working in the White House in 2017 specifically as to security clearances" and whether Delgado would have met those requirements, consistent with Judge Parker's discovery order. ECF 16-1 at 8–9. A deposition by written questions strikes the balance between burdening the Executive Branch to assess any privilege concerns and allowing Delgado to ask questions critical to her case. *See Halkin v. Helms*, 690 F.2d 977, 986–87 (D.C. Cir. 1982) (describing the District Court's decision to "require[] plaintiffs to serve their initial questions upon the deponents in writing and far enough in advance to permit the CIA to evaluate the need to assert the state secrets privilege with respect to matters inquired into."). This process will also allow McGahn to consult with relevant stakeholders in the Executive Branch before answering Delgado's questions and eliminate the obvious complications that could arise during an in-person deposition.

<u>Remaining Objections</u>

Now, the Court will address McGahn's remaining challenges to the subpoena because they are easily overruled in light of the Court's decision to allow the deposition to proceed by written questions. First, McGahn argues that the subpoena is facially invalid because it lists "Zoom" as the place of compliance. ECF 1-1 at 18. The Court disagrees. *See, e.g.*, *Chen v. F.B.I.*, 2022 WL 17851618, at *3 (D.D.C. Oct. 18, 2022) ("[The] subpoena is not invalid merely because [it] identified a virtual location [for the] deposition."). This is somewhat of a moot point in any event because the Court has ordered Delgado to conduct the deposition by written questions. Second, the Court does not find that the subpoena imposes an undue burden on McGahn. The Court is

sensitive to imposing a discovery burden on a third party to the underlying litigation, but finds that the much-narrowed scope of the subpoena, along with the further limitation that McGahn can respond to Delgado's questions in writing, defeats any claim of undue burden under Rule 45(d)(3)(A)(iv). *See* ECF 1-1 at 15–18. Finally, with respect to any concerns about attorney-client privilege, McGahn can make any specific attorney-client privilege objections in response to Delgado's written questions.

*   *   *

Accordingly, Petitioner's motion to quash, ECF 1, is **GRANTED in part and DENIED in part**. The Court directs the Parties to confer and set a schedule to complete the deposition by written questions, which shall include dates for (1) Delgado to submit questions to McGahn, and (2) McGahn to respond to Delgado's questions, including lodging any objections. Consistent with Judge Parker's order, ECF 16 at 2, the deposition should be complete by August 15, 2024.

**SO ORDERED.**

DATE: July 16, 2024

_____<br>
Jia M. Cobb<br>
U.S. District Court Judge